KEARNEY, Judge pro tern.
This is a direct action suit for personal injuries and related items of damages brought in East Baton Rouge Parish by Mr. and Mrs. James A. O’Neal against Maryland Casualty Company on an Owners’, Landlords’ and Tenants’ Liability Policy. The damages resulted from an accidental fall experienced by Mrs. O’Neal on premises located in Pointe Coupee Parish and owned by Mr. James M. Teer, defendant’s insured. From a judgment dismissing plaintiffs’ suit at their cost, plaintiffs have appealed. Whether the plaintiffs have established their claims by a reasonable preponderance of the evidence is the principal question involved in this suit. Essentially it is a question of fact.
The district court described the “facts pertinent to a decision of the case, as revealed by the evidence, pleadings and stipulations,” as follows:
“* * * Mr. James Teer had constructed a two-story building fronting on the highway and adjacent on the rear to a large lake known as False River in Pointe Coupee Parish. The Teers occupied as their home the upper floor of the building and the lower floor facing the lake was comprised of two apartments. Access to these apartments was gained by a front door to each, there being no rear exist to either apartment. Mr. and Mrs. James O’Neal occupied one apartment unit and Mrs. O’Neal’s mother (Mrs. J. C. Braswell) and sister (Miss Maude Braswell) had rented the adjoining apartment for the summer. Each apartment was cooled by individual air-conditioning units set into the wall backing onto the front porch or concrete ‘patio.’
“It was acknowledged by all parties that the O’Neal’s air-conditioner did not leak or have excess condensation on the outside while the one in the apartment occupied by the Braswells-had a constant flow of water from a condensation spout which directed the water into a large three to five gallon bucket placed under the spout for this purpose. It is further agreed by all that this bucket on occasion filled and ran over onto the porch or ‘patio’ and on down to the ground.
“The front door to the Braswell’s apartment was immediately adjacent to this unit with approximately one or two inches space between the bucket and the steps leading out of the apartment onto the patio. These steps were prefabricated concrete and the top step was more in the nature of a small platform. After emerging from the door, on which there was a wooden door and a screen with pneumatic closing spring and a latch-type handle, one would walk across the porch and descend to the ground by means of one more concrete step. The porch was covered and there was a wall between the Braswell side and the side occupied by the O’Neals which necessitated walking around to go from one apartment to the other.
“On the day in question the O’Neals had lunched with the Braswells and had started back to their own apartment, Mr. O’Neal carrying a watermelon and Mrs. O’Neal carrying a pan or stew-pot in her right hand. Mrs. O’Neal preceded her husband and, after going out onto the patio, realized Mr. O’Neal could not open the screen latch with his hands full; whereupon she turned around and reached up with her left hand and opened the screen for him. In the short interval necessary for this maneuver Mrs. O’Neal slipped and fell back either on the steps or into the corner, causing abrasions, bruises and a compression fracture of the second lumbar vertebra which necessitated approximately ten *727 ■days hospitalization and the wearing of a brace for a period of more than four months.
“The first issue presented by this case is whether or not Mrs. O’Neal’s fall was occasioned by negligence attributable to Mr. Teer for which the insurance company can be held liable.
“Considerable testimony was introduced by witnesses for the plaintiff tending to show that the bucket under the air-conditioner frequently overflowed; that there remained near the bucket and consequently near the step a formation of a green slimy substance which was slippery; that on occasion when the wind blew there would be water on the step; that the concrete porch from the air-conditioner to the edge of the porch was usually wet; that the bucket was emptied by various people but generally by Mr. O’Neal or Mr. Teer; that all witnesses were aware of the bucket and the drip from the air-conditioner.”
Several witnesses testified that the precast concrete steps at the entrance of the Braswell apartment “wobbled” about one-eighth of an inch when stepped on at one end. It appears that this wobbling was not noticed until after the accident, except by Miss Braswell, and Mr. Teer’s attention was not directed to the condition until after the accident. Whether the condition was of sufficient magnitude to constitute even the slightest danger is not established.
The district court continued its review of the evidence as follows:
“Defendant’s witness, Mr. Teer, testified that he only emptied the bucket under the air-conditione'r when he happened to be downstairs and noticed it running over. Further, he is not shown to have known or to have been notified that the steps which he himself installed wobbled even slightly.
“Mrs. O’Neal’s version of the events immediately preceding and during the accident does not leave the Court with a clear impression of exactly how she slipped. Certainly there is no doubt but that she had already descended the two steps, had released the screen door and then, upon realizing her husband carrying the watermelon could not open the door without aid, she turned back and with one or both feet on the steps reached with her left hand to open the screen. Apparently, at this moment Mrs. O’Neal lost her balance, slipped and fell causing the painful injuries of which she complains.
“We have searched the record for any positive evidence or testimony as to the real cause of Mrs. O’Neal’s fall but we find none. Mrs. O’Neal could not testify that any water was on the step or the porch at the time; on the contrary she stated (Tr. 195) ‘Well, I went to open the door for my husband, and I believe that it back (sic) I must have — if I was coming back, instead of watching what I was doing, stepped back off, or my foot must have slipped off either the top of the step or the floor right at the side — it must have slipped and I fell over — the best I can remember — I fell over backwards. And, of course, I was trying — as I was going over, I was going like this — I guess I was trying to clutch at the wall, and my elbow hit the wall, and one elbow hit that pan there. * * * ’
“On cross-examination Mrs. O’Neal testified that as far as she could remember she had opened the screen door all the way back. Further, she testified, T imagine when I opened the door, that I had one foot on one step and one on another, then when I was going back, I couldn’t have had both feet on the steps, or I couldn’t have had the door back.’ In answer to defendant’s attorney Mrs. O’Neal stated she was not sure why she slipped but that she knew something caused her to slip. However, she stated she could not say with conviction there was water on the *728 step or that the bucket was overflowing or that there was anything on the step to cause her to fall.
“Mr. Robillard, the ambulance driver who answered the call to take Mrs. O’Neal to the hospital, testified that he waited approximately ten minutes while the doctor was examining the patient. During that time he observed the air-conditioner hut did not observe the bucket, any water, slime, or any foreign substance on the steps or porch.
“Mr. Teer, owner of the apartment house, testified he heard a clatter and he and Mrs. Teer went downstairs immediately. He stated he found Mrs. O’Neal lying on the steps with her feet on the patio and her arm resting on the top step with the screen door open hut against her arm. He went next door to call the doctor and ambulance and Mrs. O’Neal had been moved inside when he returned and he examined the patio and the steps particularly and found no foreign substance nor water on the steps which would have induced the fall. He stated the tenants of this particular apartment were always advised that it was their duty to empty the bucket under the dripping air-conditioner and also that they were to maintain their own apartments insofar as cleaning was concerned. He testified the only time he emptied the bucket was when he happened to see it overflowing and he would empty the contents on the flower bed in the yard.
“Mr. O’Neal, for whom the screen door was being opened at the time of the fall, could not testify with certainty that the steps were wet although he stated he ‘assumed’ the porch was wet and slippery on the day in question since he was aware of. the leaking air-conditioner and often emptied the bucket himself in order to help the ‘ladies’ and keep them from having to empty the heavy bucket. However, even though he with the aid of someone else, moved Mrs. O’Neal from the steps to a bed could not recall anything which would have caused the fall, except that the corner of the patio was ‘usually’ wet and he assumed that one foot slipped on this wet portion.
“Mrs. Teer, who was the wife of the owner and was responsible for renting the apartments, testified that she reached the scene of the accident a few minutes after it occurred and that Mrs. O’Neal was lying on the approximate center of the steps with her feet on the patio and with the screen door open resting against her arm. She stated positively that she saw no water on the steps or the porch at the time.
“While all the testimony coupled with the photographs of the apartment and steps and the location of the air-conditioner leads to the conclusion that on many occasions the porch was wet, nevertheless, the Court is unconvinced that on the day and time in question there was any water, slime or other substance on or near the steps which were the actual cause of Mrs. O’Neal’s accidental fall.”
In addition to the testimony of Mrs. O’Neal, quoted by the district court in the foregoing discussion, wherein she apparently concedes that she could have “stepped back off” the steps “instead of watching what” she “was doing,” there is evidence that she may have placed her foot too close to the edge of the step. Whether she put her foot on the porch is uncertain. Mrs O’Neal testified as follows:
“A As far as I can remember it was —I think I had one foot right here and one foot right here, and then as I was pulling the door back I think either I had one foot here and one foot here, and as I pulled the door back, it slipped off this edge here and I got in this and I couldn’t stop — I couldn’t stop slipping as I got in with this water.”'
*729 The only other eye-witness, Mr. O’Neal, was unable to state with any degree of consistency, exactly what happened, although he was willing to speculate upon the possibilities.
Mrs. Braswell, an elderly woman of 82 years of age, who, because of an arthritic condition walked with a crutch or cane, used the steps in question daily without assistance. Miss Braswell, knowing her mother’s condition and the fact that the porch was frequently wet, felt there was “no reason to mop the water on the porch.” It appears that no one, including the O’Neals, the Teers and the Braswells, considered the overflowing bucket of sufficient consequence to merit attention. The apartments were regularly operated as a fishing resort and leased for short periods of time. Apparently the damp concrete did not disturb tenants who rented the premises as a fishing camp.
Plaintiffs concede in brief that “the premises had been used by Mrs. O’Neal and many others on many occasions without injuries resulting.” They further state that “all persons had been able to use the premises by exercising the ordinary care of a prudent person.” The steps and porch were not shown to be in a constant dangerous condition and they were not shown to have been wet or damp on the day the accident occured. The evidence is that on very windy days the water falling from the air conditioner drain spout would be blown onto the steps, but the wind conditions prevailing on the day of the accident were not established. The porch itself was shown to be subject to the bucket overflow only in the area to the side of the steps and extending to the front edge of the porch. Whether Mrs. O’Neal stepped on that portion of the slab which was at times wet, she could not say herself. There is nothing in the record from which we could without unjustified conjecture, infer that the fall was caused by a dangerous condition for which the property owner was responsible. There was a persistent attempt to- show that the frequent wetting had produced a greenish algae or other growth which could cause someone to slip if it was stepped upon, but the most that can be concluded was that there was a growth in the bucket and a discoloration on the porch. Some of the witnesses described it as slippery, but this was based on a visual rather than a tactile observation. We need not consider upon whom the responsibility lay to clean the porch, since we agree with the district court’s assessment of the evidence.
The district court concluded its reasons for judgment as follows:
“The Court is of the opinion this case falls squarely under the rule stated in Bradberry v. Dispenza (La.App. 2 Cir., 1960) 125 So.2d 441:
“ ‘The record fails to show that plaintiff has proved that any defect in the premises was responsible for her injuries. In fact, our brother below aptly concluded “There is nothing to show what actually caused this accident except that she slipped.” This, in itself, is not sufficient evidence to maintain the burden of proof assessed to plaintiff here.’
“There is positive evidence that plaintiff, Mrs. O’Neal fell and injured herself; there is no satisfactory evidence, even according to her own testimony or the testimony of her husband Mr. O’Neal who was with her at the time, why she fell. Her fall could have been due to one or more of a number of reasons, other than the negligence of defendant’s insured.”
Appellants complain that the court erred by imposing a greater burden of proof on the plaintiffs than the law requires, conceding that they are required to establish their claims to a legal certainty by a reasonable preponderance of the evidence.
Appellants rely on the case of Estes v. Aetna Casualty & Surety Co., La.App., 157 *730 So. 395. In that case it was shown that in a brick courtyard where the bricks were laid without cement, concrete or grout, the bricks had become covered with accumulations of mud and a green fungus which became very slippery when wet. It was established that the bricks were wet on the day of the accident, and the plaintiff established the causal connection by testifying that the accident occurred when her foot slid on the mud and slime and “flew out from under” her.
In the present case the allegedly dangerous condition was not shown to exist on the day of the accident, and the cause of the accident was not shown to be any condition of the steps or porch. Plaintiffs failed to establish their claims by a reasonable preponderance of the evidence.
It is not necessary to consider the appellants’ well-briefed contentions regarding contributory negligence, assumption of risk, and the status of the injured plaintiff as an invitee or licensee.
For the foregoing reasons judgment is affirmed.